# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**GARY LEE PRATER,**
**Claimant Below, Petitioner**

**FILED**

August 2, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 16-0898** (BOR Appeal No. 2051183)
                  (Claim No. 910020791)

**WEST VIRGINIA OFFICE OF**
**INSURANCE COMMISSIONER,**
**Commissioner Below, Respondent**

**and**

**ALMA DEVELOPING, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Gary Lee Prater, pro se, appeals the decision of the West Virginia Workers' Compensation Board of Review. West Virginia Office of the Insurance Commissioner, by Brandolyn N. Felton-Ernest, its attorney, filed a timely response.

The issue on appeal is whether appointments on July 6, 2015; August 10, 2015; September 9, 2015; and October 7, 2015; with Ronald Mann, M.D., should be authorized under the claim. The claims administrator denied the request for authorization for all the above listed dates by two separate Orders on September 18, 2015, and one Order on October 21, 2015. The Office of Judges reversed the claims administrator's decisions and approved all the appointments on March 10, 2016. The Board of Review reversed and reinstated the claims administrator's decisions on September 1, 2016. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

1

Mr. Prater, a coal miner, for Alma Developing, Inc., was injured on June 13, 1991, in the course of his employment. Mr. Prater stated in his application that he was struck by a piece of slate. Diane Shaffer, M.D., completed the physician's section stating that Mr. Prater sustained an occupational injury to his teeth, neck, back, and head. Dr. Shaffer diagnosed a head trauma, acute cervical sprain, and acute lumbar sprain. On July 9, 1991, the claims administrator held the claim compensable.

An April 6, 1999, lumbar MRI showed mild degenerative changes in the lumbar spine. There were mild disc bulges at L3-L4 and L4-L5. At the L4-L5 level there was also a mild left foraminal disc protrusion. A moderate bulging disc with a small central disc protrusion was also observed at L5-S1. On November 3, 2000, David Jenkinson, M.D., completed an independent medical evaluation. According to Dr. Jenkinson, Mr. Prater was at maximum medical improvement. An October 13, 2009, MRI of the cervical spine revealed minimal diffuse bulging of the discs at C4-5 and C6-7, a left paracentral C5-6 disc herniation with bilateral neural foraminal encroachment left greater than right, and no focal cervical spinal cord signal abnormality.

On August 18, 2014, Ronald Mann, M.D., treated Mr. Prater for a follow-up. According to Dr. Mann, Mr. Prater continued to have back pain and tenderness. Dr. Mann diagnosed neck and back pain. Mr. Prater underwent a urine drug screen, which was positive for opiates. Dr. Mann stated Mr. Prater should continue with his medications as prescribed and return to the office in three months. Mr. Prater returned for a follow-up on November 17, 2014. Dr. Mann stated that Mr. Prater had neck and back pain that was essentially stable and has not changed from the visit of August. However Dr. Mann opined that he does require the medication for his functionality. Mr. Prater again underwent a urine drug screen, which was positive for opioids. Dr. Mann recommended Mr. Prater continue his medications as prescribed and return to the office in three months.

On March 11, 2015, Mr. Prater returned to Dr. Mann. Dr. Mann diagnosed stable back pain. Mr. Prater again underwent a urine drug screen, which was negative for all tested medications. Dr. Mann recommended Mr. Prater continue his medications as prescribed and return to his office in three months. Dr. Mann completed a letter to the claims administrator on March 24, 2015, requesting that the medications Hydrocodone, Nexium, Neurontin, Zoloft, Celebrex, and Fioricet be approved for his work injury. On March 27, 2015, the claims administrator denied Dr. Mann's request for Hydrocodone because no opioids were detected in Mr. Prater's system on the March 11, 2015, drug screen.

The claims administrator approved the medication Zoloft for a sixty-day period in order to allow Mr. Prater time to find an alternate payment source for the medication on March 27, 2015. The claims administrator noted that further payment would not occur because Zoloft was prescribed for anxiety and sleep difficulty, neither of which are compensable components of the claim. By a separate Order on March 27, 2015, the claims administrator denied the authorization request for the medication Fioricet.

On April 8, 2015, Mr. Prater returned to Dr. Mann for a refill on his medication. According to the office note, Mr. Prater underwent a urine drug screen, which was positive for opiates. However, handwritten on the office note are a circled negative sign and the letters "OPI" for opiates. Dr. Mann stated that Mr. Prater should continue his medications. Mr. Prater returned to Dr. Mann on July 6, 2015, to continue his current medications. It was unclear as to whether Mr. Prater underwent a urine drug screen.

In a July 8, 2015, letter, Dr. Mann stated that he prescribed Mr. Prater Hydrocodone, Nexium, Neurontin, Zoloft, Celebrex, and Fioricet for the work injury. Dr. Mann stated the medications were prescribed for chronic pain so that he may have quality of life and be able to maintain his functionality. He further stated that Mr. Prater will require the mediations long-term, and his injury will progress with time. The claims administrator responded by stating that it was denying payment for an office visit on July 6, 2015. The claims administrator wrote that it was no longer authorizing narcotic medication; therefore monthly visits to obtain narcotic prescriptions would also not be authorized. In addition, urine drug testing was also not authorized.

On August 10, 2015, Mr. Prater returned to Dr. Mann to refill his medications. Dr. Mann wrote that Mr. Prater was doing well with no complications. He diagnosed low back pain and did not drug screen Mr. Prater. By an August 24, 2015, letter the claims administrator stated it was not authorizing the August 10, 2015, office visit. Mr. Prater returned to Dr. Mann on September 9, 2015. On September 18, 2015, the claims administrator denied Mr. Prater's request for office visits with Dr. Mann on July 6, 2015, and August 10, 2015.

On September 30, 2015, Dr. Mann again wrote a letter, which stated that Mr. Prater has an Order from a court that requires the claims administrator to provide lifetime medical treatment for the injury. He stated that Mr. Prater continues to experience back pain from his work injury. He has had further progression of his injuries with the degenerative changes and has exacerbations of his pain, especially when he is unable to get his medications. His medications include Hydrocodone 7.5 mg for breakthrough pain management, Nexium for GI upset secondary to his medications, Neurontin for his neuropathic pain management, Zoloft for anxiety/sleep difficulty, Celebrex for post-traumatic arthritis, and Fioricet for muscle contraction headaches. This has been Mr. Prater's medication regimen for a while and he has been controlled reasonably well with this. Mr. Prater is asking to only be seen on a quarterly basis at which time he will also have a urine drug screen with medications refills in-between for his Hydrocodone, for which refills cannot be provided. Mr. Prater saw Dr. Mann on October 7, 2015, to refill his medications.

On October 21, 2015, the claims administrator denied an authorization request for the October 7, 2015, office visit with Dr. Mann. An October 28, 2015, Office of Judges Order authorized the medications Hydrocodone and Fioricet. However, the Board of Review reversed this Order on March 29, 2016.

The Office of Judges reversed the claims administrator's decisions and approved the visits with Dr. Mann in its March 10, 2016, Order. The Office of Judges noted that the West

Virginia Office of the Insurance Commissioner relied on Dr. Jenkinson's November 3, 2000, medical evaluation, which stated that Mr. Prater sustained only minor cervical muscle strains, a knee injury, and a minor low back strain from the compensable injury. The Office of Judges discounted Dr. Jenkinson's report because it was over fifteen years old. In addition, the claims administrator continued to authorize medications for Mr. Prater long after Dr. Jenkinson's report. As a result, the Office of Judges determined that Dr. Jenkinson's medical evaluation was not a good indicator of whether Mr. Prater's current requests for office visits with Dr. Mann are related to the compensable injury. The Office of Judges noted that the only other evidence regarding continued medical treatment was Dr. Mann's September 30, 2015, letter explaining that he had been treating Mr. Prater for the compensable injury for years and that he needed the specific medication. The Office of Judges did not adopt the assertion of the West Virginia Office of the Insurance Commissioner that Dr. Mann was treating a degenerative and congenital condition because it concluded there was no medical evidence to prove that contention. The Office of Judges found that Dr. Mann's report was the only relevant report of record and that his report indicated the medication and appointments were needed. The Office of Judges found that his letter met all the West Virginia Code of State Rules § 85-20 (2006) guidelines.

The Board of Review adopted the material findings of the Office of Judges and concluded the Office of Judges was clearly wrong in its September 1, 2016, decision. The Board of Review noted that on March 29, 2016, it addressed the authorizations of the medications Hydrocodone and Fioricet, which the Office of Judges did not note in its Order. The Board of Review determined that Mr. Prater did not provide the documentation necessary for the authorization of Hydrocodone and Fioricet. The Board of Review found that the request for Hydrocodone did not meet the requirements of West Virginia Code of State Rules § 85-20-53 and § 85-20-62 (2006). The Board of Review further found that Fioricet and Zoloft were not medically necessary and reasonably required in the course of treatment for the compensable injury. Consequently, the Board of Review concluded that the office visits to Dr. Mann in question were used to obtain refills for those medications, and as a result, were not medically necessary and reasonably required.

After review we agree with the conclusions of the Board of Review. The issues on appeal are whether the visits to Dr. Mann on July 6, 2015; August 10, 2015; September 9, 2015; and October 7, 2015; were medically related and reasonably required to treat a compensable injury. Dr. Mann indicated that the primary reason that Mr. Prater needs to visit him is to be given refills of his controlled substance medications. However, on March 29, 2016, the Board of Review addressed the issue of whether Hydrocodone, Fioricet, and Zoloft were medically related and reasonably required treatment. The Board of Review concluded that none of the medications should be approved to treat the compensable injury. The decision was appealed to this Court. In *Prater v. West Virginia Office of the Insurance Commissioner and Alma Developing, Inc.*, No. 16-0369 (W. Va. Supreme Court, March 30, 2017) (memorandum decision), this Court determined that the request for Hydrocodone did not meet the requirements of West Virginia Code of State Rules § 85-20-53. Additionally, the medications Fioricet and Zoloft were determined to be for the treatment of a non-compensable condition. Because the medications sought were properly denied, the appointments required to prescribe them, were also properly denied by the Board of Review.

4

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: August 2, 2017**


**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker